ROYER, STULTZFUS and ECKERT, appellants, *against* TATE and others, appellees.

A decree which does not dispose of the whole fund for distribution, under the act of assembly "relative to the distribution of money arising from sheriff's and coroner's sales," is not a *final* decree, and an appeal taken from such decree will be quashed.

This was an appeal taken by *Abraham Royer, John Stultzfus* and *Peter Eckert*, from the decree of the Court of Common Pleas of Lancaster county, in the matter of the distribution of the money raised by the sale of the real estate of *James Hamilton*, deceased, by the sheriff.

On the 2d of September, 1825, the sheriff was ruled to pay the money into court, and notice to *J. Hopkins*, Esq., at bar, was noted on the record. On the 9th September, 1825, he paid seven thousand seven hundred and thirty-five dollars and twenty-five cents, the nett proceeds, into court. On the 30th September, 1825, a rule was taken to show cause why the judgment of *Susannah Ellmaker*, should not be paid out of these proceeds, and on the 29th December, 1825, a similar rule was taken in behalf of *Hamilton, Potter, Ramsey* and *Clark*, other judgment creditors of *J. Hamilton*, deceased. On the 13th of March, 1827, these rules were argued; and on the 1st May, 1827, the court decreed, that "the judgments obtained by *Tate* and wife, No. 7, to April term, 1817; *Joshua Potter*, to April term, 1821; *William Ramsey*, to the same term; *Grayson*, assignee, &c. to January term, 1818, and *Susannah Ellmaker*, to August term, 1824," are entitled to be paid as judgments on specialties out of the proceeds of the sale of the real estate of *James Hamilton*. Those obtained by *Tate* and *wife*, No. 8, April term, 1817; *Jane M. Tate*, to August term, 1824; by *Clark* and *wife*, to April term, 1823, "are entitled to be paid as judgments on simple contract debts only." The court added. "We cannot recognize *John Stultzfus, Peter Eckert* and *Abraham Royer*, as specialty creditors. There was no debt due to them at the time of *J. Hamilton's* death. Their remedy is confined to the covenant of warrantee in the deed, and the claim must be made out judicially before it can be enforced."

From this decree an appeal to the Supreme Court, was taken by the present appellants, and on the 6th of June, 1827, this appeal was dismissed. On the 26th June, 1827, *Hopkins*, moved the Court of Common Pleas, on the petition of the appellants, "That the court proceed to make a final distribution of the proceeds of the real estate of the said *James Hamilton*, agreeably to the 14th section of the act of the 19th April, 1794, and that if it should appear, that any incertitude, as to the question of any other claims exists, that the court direct issues to ascertain them." On the 30th June, 1827, that court made the following decree:

"The court having decided on the 1st May, 1827, that the judgments obtained by *Tate* and *wife*, to April term, 1817, No. 7; of

30

(Royer, Stultzfus and Eckert, appellants, *v.* Tate, and others, appellees.)

*Joshua Potter,* to April term, 1821, No. 440; of *William Ramsey,* to April term, 1821, No. 441; of *Grayson,* assignee of *John Whitacre,* executor of *Stephen Wray,* to January term, 1818, No. 52; *Susannah Ellmaker,* to August term, 1824, No. 28, are entitled to be paid as judgments on specialties out of the proceeds of sale of the real estate of *James Hamilton;* and that *John Stultzfus, Peter Eckert* and *Abraham Royer,* could not be recognized as specialty creditors; no questions on those points are now open for discussion. Under that decision, the prothonotary should pay the amounts due on those judgments, and if not paid after this declaration of the court, payment will be enforced by attachment. The court will proceed on a proper application, by those who claim any part of the balance to make a final distribution of it agreeably to law, and, when such claims are made; if any facts connected with such distribution, should be disputed, the court will direct an issue, if the party asking it, be legally entitled thereto."

Same day (30th June,) appeal was taken by *James Hopkins,* attorney of *Abraham Royer,* and others, and this affidavit made, viz: " *James Hopkins,* being duly affirmed according to law, saith, that this appeal is not taken for the purpose of delay, and further saith not." On the 23d of July, 1827, bail on the appeal was entered.

*Champneys, Porter* and *Ellmaker,* for the appellees, now moved the court to dismiss the appeal.

1. Because the affidavit made to obtain the appeal, is not that required by law, and the security required by the act of assembly, was not entered.

2. No decision was made after the 1st day of May, 1827, from which an appeal could be taken.

They referred to *Pamphlet laws* 471, act of the 16th of April, 1827. *Purd. dig.* 613, act of 27th *March,* 1813.

*Hopkins,* contra, contended that the first decree of the 1st May, 1827, from which the appeal was taken, which was dismissed by the Supreme Court, was but interlocutory; and that the decree made on the 30th June, 1827, from which this appeal was taken, was the final decree. A decree is only final when the court dispose of the whole subject matter in dispute. Under the act of assembly authorising this proceeding, no bail is required to obtain an appeal. The appeal is effectual without bail, although without it, there is no *supersedeas. Magil* v. *Caufman,* 4 *Serg. & Rawle,* 318. The affidavit is stronger than that required by the act, and is well taken by the attorney of the appellants.

PER CURIAM.—This appeal must be quashed. There is yet no final decree. The Court of Common Pleas must have all the parties before them, and dispose of the whole fund. This must be done to make a final decree.              Appeal quashed.

---

NOTE—ROGERS, J., was sitting at *Nisi Prius* in Philadelphia, during this adjourned court, and took no part in the judgments given at it.